### UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **ROBERT CAMPBELL,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CIVIL ACTION** |
| ) | **NO. 21-11637-TSH** |
| **UNUM GROUP and PROVIDENT** ) | |
| **LIFE AND ACCIDENT** ) | |
| **INSURANCE COMPANY** ) | |
| **Defendants.** ) | |
| ) | |

### MEMORANDUM OF DECISION AND ORDER
### ON PLAINTIFF'S MOTION TO REMAND
**September 27, 2022**

**HILLMAN, S.J.**

### Introduction

This is an action concerning an employee disability policy.  Robert Campbell ("Plaintiff" or "Dr. Campbell") seeks to recover benefits under a disability policy issued by Defendants Unum Group and Provident Life and Accident Insurance Company ("Unum" or "Defendants"). The Complaint, which alleges only state law claims, was filed in the Worcester Superior Court. Defendants removed the action to federal court, contending that the case is governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq ("ERISA"), and that Plaintiff's state law claims are accordingly preempted. Plaintiff contends that Massachusetts state law governs the action in all respects and now moves to remand.

**<u>Background</u>**

Dr. Campbell is a physician and resident of Massachusetts. From the time he applied for disability coverage to the present, he has been employed as an interventional cardiologist by Mount Auburn Cardiology Associates, Inc., ("Mount Auburn") a professional corporation.

On March 15, 1991, Mount Auburn  entered into a Salary Allotment Agreement with Provident Life pertaining to the payment of premiums for policies issued by Provident Life to Mount Auburn Cardiology employees.  *See* <u>Affidavit of Carol Bigelow, Senior Underwriter at Provident Life</u>, Docket No. 14, at ¶ 3.The Salary Allotment Agreement was signed by the president of Mount Auburn Cardiology. Under the Salary Allotment Agreement, Mount Auburn Cardiology agreed to "To pay in full the required premiums for such policies and to remit such premiums to the Insurance Company when due." *Id*. On April 10, 1991, Provident Life received a memo from Agent Roger McNeil which stated "Shortly we will be submitting 3 Indiv. applications on the above's [Mount Auburn] partners ... The meeting to determine about the Buy Sell on the partners will be held next week so hopefully they will be along shortly." The memo further stated, "Attached is income confirmation for the group from the Business Agent." *Id*.

On March 30, 1991, Dr. Campbell signed an application for Provident Life disability coverage. In the application, Dr. Campbell stated he was employed by Mount Auburn Cardiology. Provident issued the Policy to Dr. Campbell effective June 1, 1991. Provident Life issued policies to three other Mount Auburn Cardiology employees with the same effective date. As a result of the Salary Allotment Agreement, Mount Auburn Cardiology was assigned Risk Group number 63396. Dr. Campbell's policy was added to the Risk Group, along with policies issued to the other Mount Auburn Cardiology employees. Invoices for the premiums due were sent to Mount Auburn. The premiums for those policies were billed to and paid by Mount

Auburn in accordance with the Salary Allotment Agreement, as part of a "list bill." In addition, because Dr. Campbell and the other Mount Auburn Cardiology employees were part of a plan sponsored by Mount Auburn Cardiology, all policies received a premium discount of 12%. *See id*. at ¶ 10-11.

In May 1995, Dr. Campbell signed another application for an increase in coverage. In it, he specifically stated that Mount Auburn Cardiology would pay the premium for the coverage and no portion of the premium would be included in his taxable income. At that time, Dr. Campbell submitted tax returns to Provident Life showing that he was a W-2 employee of Mount Auburn Cardiology. Provident Life approved the increase in coverage.

In accordance with the Salary Allotment Agreement, list bills for Dr. Campbell's policy, as well as the other policies issued to Mount Auburn employees, continued to be sent to Mount Auburn and paid by it. Mount Auburn continued to pay Dr. Campbell's policy until March 2010 when his policy was removed from the list bill. Thereafter, premium notices were sent to Dr. Campbell at his home address. Dr. Campbell continued to retain the premium discount due to being part of a risk group.

On August 2, 2019, Dr. Campbell filed an application for disability benefits under his Policy, alleging he suffered from disability due to an injury, which prevented him from performing the duties of his specialty occupation as an interventional cardiologist. On November 25, 2019, Unum approved Dr. Campbell's claim for benefits. On December 20, 2019, Unum wrote Dr. Campbell determining his disability was due to a sickness and was not "the result of an accident."

Dr. Campbell filed suit in Worcester Superior Court on July 26, 2021, alleging violations of M.G.L. c. 93A and M.G.L. c. 176D, breach of contract and breach of the covenant of good

3

faith and fair dealing. Defendants removed this case to Federal Court on October 7, 2021. Dr,
Campbell now moves to remand the case to Superior Court on the grounds that ERISA does not
preempt his claims.

### Standard of Review

"Under the removal statute, 'any civil action brought in a state court of which the district
courts of the United States have original jurisdiction, may be removed by the defendant' to
federal court." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207, 124 S.Ct. 2488, 2494 (2004)
(*quoting* 28 U.S.C. § 1441(a)). Here, the Defendants bear the burden of proving that a federal
question is before this Court. *BIW Deceived v. Local S6, Indus. Union of Marine & Shipbuilding
Workers of America,* 132 F.3d 824, 831 (1st Cir. 1997) ("the removing party bears the burden of
persuasion vis-a-vis the existence of federal jurisdiction").

### Discussion

ERISA protects employee benefit rights in connection with any "employee benefit
plan" unless the plan is specifically exempted. 29 U.S.C. § 1003(a). ERISA generally covers
two types of employee benefit plans: employee welfare benefit plans and employee pension
benefit plans (or plans that are both). 29 U.S.C. §§ 1002(1),1002(2), and 1002(3). Unum
contends that Dr. Campbell's disability policy qualifies as an employee welfare benefit plan.

ERISA defines an "employee welfare benefit plan" as:

any plan, fund, or program which has heretofore or is hereafter established or
maintained by an employer or by an employee organization, or by both, to the
extent that such plan, fund, or program was established or is maintained for the
purpose of providing for its participants or their beneficiaries, through the
purchase of insurance or otherwise, … benefits in the event of … disability …
29 U.S.C. §1002(1).

The First Circuit has adopted the so-called Donovan test for determining whether an ERISA employee welfare benefit plan exists. *See O'Leary v. Provident Life and Accident*, 456 F.Supp.2d 285, 289 (D.Mass. 2006*), citing Wickman v. Northwestern Nat'l Ins. Co*., 908 F.2d 1077, 1082 (1st Cir.1990) (*citing Donovan v. Dillingham*, 688 F.2d 1367, 1370 (11th Cir.1982)). Under the *Donovan* test, an employee welfare benefit plan has five elements:  (1) a plan, fund, or program, (2) established or maintained, (3) by an employer or by an employee organization, or by both, (4) for the purpose of providing … disability … benefits, (5) to participants or the beneficiaries. *Donovan*, 688 F.2d at 1370. An insurer has the burden to show its plan qualifies as an ERISA plan by a preponderance of the evidence. Employee Retirement Income Security Act of 1974 § 3, 29 U.S.C.A. § 1001 et seq. "The question of whether an ERISA plan exists is 'a question of fact, to be answered in light of all the surrounding facts and circumstances from the point of view of a reasonable person.'" *Wickman*, 908 F.2d at 1082 (citation omitted).

An ERISA plan must be established by a "written instrument," 29 U.S.C. § 1102(a)(1), which can be the insurance policy itself. *Cinelli v. Sec. Pac. Corp*., 61 F.3d 1437, 1441 (9th Cir. 1995). ERISA requires that the written instrument "provide for one or more named fiduciaries who jointly or severally shall have the authority to control and manage the operation and administration of the plan," 29 U.S.C. § 1102(a)(1), and must have certain "requisite features" including a "procedure for amending such plan, and for identifying the persons who have authority to amend the plan," 29 U.S.C. § 1102(b)(3). *Westover v. Provident Life and Accident Ins. Co.*, F.Supp.3d, 2022 WL 168661, at *5. ERISA was also designed to provide numerous substantive protections to employees. "ERISA's substantive protections are intended to safeguard the financial integrity of employee benefit funds, to

permit employee monitoring of earmarked assets, and to ensure that employer promises are kept." *Belanger v. Wyman-Gordon Co.*, 71 F.3d 451, 455 (1st Cir. 1995) (*citing Fort Halifax*, 482 U.S. at 15, 107 S.Ct. 2211).

That a plan for purposes of ERISA was established in this case appears to be met. *See O'Leary*, 456 F.Supp.2d at 290. A reasonable person can determine that disability benefits are the intended benefits; that Dr. Campbell and other Mount Auburn personnel were the beneficiaries; by virtue of paying the premiums Mount Auburn was the source of the financing; and the procedures for receiving benefits are set forth in the policy.

Even so, Dr. Campbell argues that the disability policy does not qualify as an "employee welfare benefit plan" within the meaning of ERISA. In support of his argument, Dr. Campbell asserts that he was an owner of Mount Auburn, not an employee, that Mount Auburn did not establish or maintain a plan; he, rather than Mount Auburn paid for the benefits; and there was no written plan. Unum contends that Plaintiff's policy is part of Mount Auburn's employee benefit program, that coverage was not issued as part of an "isolated and aberrational incident" and that premiums were billed directly to Mount Auburn at its business address via list bill with premiums for coverage.

Dr. Campbell first argues that the mere purchase of insurance by an employer is insufficient to establish an ERISA plan.  An employer need not however administer a plan for it to fall within ERISA's ambit. *See Brundage-Peterson v. Compcare Health Servs. Ins. Corp.*, 877 F.2d 509, 511 (7th Cir. 1989) ("[T]he contingent feature of a true welfare benefits plan is unaffected by the delegation of administration of the plan to an insurance company with delegation in fact contemplated by the statute."); *Robinson v. Linomaz*, 58 F.3d 365, 368 (8th Cir. 1995) ("[T]here is no requirement that the employer play any role in the administration of

6

the plan in order for it to be deemed an [employee welfare benefit plan] under ERISA."); *Randol v. Mid-West National*, 987 F.2d, 1547, 1550, n.5 (11th Cir. 1993)("[a]commercially purchased insurance policy in which the procedures for receiving benefits are all dictated by the insurance carrier can constitute a plan for ERISA purposes"). Nor must the employer furnish employees with formal plan documents. *See Donovan*, 688 F.2d at 1372 ("ERISA does not... require a formal written plan.").

While an ERISA plan can be established through the purchase of insurance, not every insurance purchase qualifies as a plan.  The First Circuit has indicated that "[t]he crucial factor in determining if a 'plan' has been established is whether the purchase of the insurance policy constituted an expressed intention by the employer to provide benefits on a regular and long-term basis." *Wickman*, 908 F.2d at 1083.  In making that determination, a "very important consideration is whether, in light of all the surrounding facts and circumstances, a reasonable employee would perceive an ongoing commitment by the employer to provide employee benefits," and "evidence that an employer committed to provide long-term or periodic benefits to its employees will often be telling." *Belanger*, 71 F.3d at 455; *New Eng. Mut. Life Ins. Co., Inc. v. Baig*, 166 F.3d 1, 4 (1st Cir. 1999).

In this case, Defendants have offered documents demonstrating that Mount Auburn paid the premiums for Dr. Campbell and the other Mount Auburn employees on their billing list. Mount Auburn received a Risk Group number and Dr. Campbell, and the other employees were added to the Risk Group.

The First Circuit has stated that the crucial factor in determining whether a plan has been established by the employer "is whether the purchase of the insurance policy constituted an expressed intention by the employer to provide benefits on a regular and long-term basis. *Gross*

*v. Sun Life Assur. Co. of Canada*, 734 F.3d 1, 6 (1st Cir. 2013), *citing Wickman*, 908 F.2d at 1083.  As in *Gross*, by offering the disability policy, it can be inferred that Mount Auburn undertook to provide benefits for its employees on a regular and long-term basis. The First Circuit noted, *citing Anderson v. UNUM Provident Corp*., 369 F.3d 1257, 1263 (11th Cir. 2004), that the "established or maintained" requirement is designed to ensure that the plan is part of an employment relationship. Dr. Campbell has had his policy in place from the time he applied in 1991 to the present. *See Belanger*, 71 F.3d at 455 ("evidence that an employer committed to provide long-term or periodic benefits to its employees will often be telling").

Next, Dr. Campbell contends that because Defendants did not provide him with written documentation of a plan, his plan does not fall under ERISA. In *Donovan*, the Eleventh Circuit made clear that a written document is not a prerequisite to ERISA coverage, as "[t]here is no requirement of a formal, written plan in either ERISA's coverage section . . . or its definitions section." *Donovan*, 688 F.2d at 1372.  The court stated:

> Furthermore, because the policy of ERISA is to safeguard the well-being and security of working men and women and to apprise them of their rights and obligations under any employee benefit plan . . . it would be incongruous for persons establishing or maintaining informal or unwritten employee benefit plans, or assuming the responsibility of safeguarding plan assets, to circumvent the Act merely because an administrator or other fiduciary failed to satisfy reporting or fiduciary standards.

*Id*. The First Circuit has similarly indicated that a written document is not required for ERISA to apply. *See Baig*, 166 F.3d at 5 n.6 ("[T]he absence of [written] documentation should not necessarily lead to a finding that there was no plan under ERISA."). Accordingly, the absence of a formal, written plan document does not support Dr. Campbell's argument.

Dr. Campbell argues that his policy is not governed by ERISA because it is an individual policy. This argument is without merit as ERISA does not require more than one policy.  The

statute simply allows the benefits to be funded through the purchase of insurance.  *See* 29 U.S.C. §1002(1) (employee welfare benefit plan may be established or maintained "through the purchase of insurance.").  An ERISA plan can be established through the purchase of one or more policies. *Gross*, 734 F.3d at 8 ("A 'plan' under ERISA may embrace one or more policies …); *Paul Revere Life*, 382 F.3d at 34 (disability plan provided by the employer funded through individual disability insurance policies). *See also Williams v. Wright*, 927 F.2d 1540, 1545 (11th Cir. 1991) (plan not excluded from ERISA coverage because it only applies to a single employee); *Biggers v. Wittek Indus., Inc*., 4 F.3d 291, 297 (4th Cir. 1993) ("We are not aware of any requirement that a plan must cover more than one employee in order to be controlled by ERISA.").

Finally, Dr. Campbell contends that because he began paying the premium for his policy directly to the insurer in 2010, his claims fall outside the bounds of ERISA. Because there is ample authority to the contrary, that argument fails. Dr. Campbell relies on the First Circuit's holding in *Demars v. CIGNA Corp*., 173 F.3d 443 (1st Cir. 1999) however, the facts of that case are distinguishable. The Court in *Demars* found that ERISA did not apply because the plaintiff there was not employed at the time, she became disabled and further, the policy that she began payments on was a separate, "converted" policy. Here, Dr. Campbell was employed at the time of his disability and the policy was not converted into a new policy; he also continued to receive the group discount. Accordingly, this argument does not take Dr. Campbell's policy outside the scope of ERISA. *See Paul Revere Life*, 382 F. 3d at 35 (ERISA covers policy where plaintiff began to make payments six months after employment); *Moss v. Unum Provident Grp. Corp.*, 2013 WL 837230, at *6 (W.D. La.  2013) (policies remain subject to ERISA because plan as originally established was subject to ERISA).

*Safe Harbor*

Plaintiff argues that even if the insurance might otherwise be considered an ERISA plan, it nevertheless falls into the DOL regulatory "safe harbor" provision that exempts it from ERISA coverage. Under the U.S. Department of Labor's Safe Harbor provision, insurance programs are excluded from ERISA only when all four criteria of the regulation are satisfied: (1) the employer makes no contributions on behalf of its employees; (2) participation in the program is voluntary; (3) the employer's sole functions are to collect premiums and remit them to the insurer, and, without endorsing the program, to allow the insurer to publicize the program to its employees; and (4) the employer receives no consideration for its efforts, other than reasonable compensation for administrative services necessary to collect premiums. *See* 29 C.F.R. § 2510.3-1(j). For the reasons discussed above and because all factors of the safe harbor provision must be met, the Court concludes that the safe harbor provision does not exclude the plan at issue here from ERISA coverage. *See Stuart v. UNUM Life Ins. Co. of America*, 217 F.3d 1145, 1153 (9th Cir.2000) (noting that "employers must satisfy all four requirements of the safe harbor regulation ... to be exempt from ERISA coverage").

Because ERISA preempts Dr. Campbell's state-law claims as a matter of law, removal was proper and the motion to remand is therefore **denied**.

## **Conclusion**

For the reasons set forth above, Plaintiff's Motion to Remand (Docket No. 11) is ***denied***.


**SO ORDERED.**


                                                    /s/ *Timothy S. Hillman*
                                                    **TIMOTHY S. HILLMAN**
                                                    **SENIOR DISTRICT JUDGE**

11